Good morning, ladies and gentlemen and guests. And Judge Gould is appearing from Seattle, as you can see. Judge Gould, can you hear us? Yes, Chief Judge Thomas. Good morning to you and to Judge McEwen and the courtroom. Great to see you. Good morning. Kumar v. Barr is submitted on the brief, so we will proceed to oral argument on Hydrenta v. Sagan Limited. Good morning. May it please the Court, my name is Spencer Freeman. I am an attorney and counsel for the appellants in this matter. If I may, I would like to reserve four minutes for my rebuttal. We have asserted jurisdiction over the defendants pursuant to 4K2, which requires a specific three-part test. First, we must show the defendants either purposely availed themselves to the forum or purposely directed their activities towards the United States forum. In this particular case, because the copyright claims are deemed tort claims, the issue is that of purposeful direction, which will be ultimately decided under the Calder effects test, a three-part test. Second, we need to establish that our claims arose from the defendants' forum-related activities. If we meet these first two elements of the specific jurisdiction test, the burden then shifts on that third element, that third element being one of reasonableness. And at that point, the defendants have to present a compelling case that jurisdiction in the United States is unreasonable. Now the three-part Calder effects test that applies to purposeful direction requires us to establish, one, an intentional act, two, that that intentional act was expressly aimed at the United States, and three, that there is foreseeable harm in the forum. The trial court addressed these issues. It found that there was an intentional act via the website, and it found that the website was expressly aimed at the United States forum. The trial court's analysis on these issues was correct, and it's in accordance with The trial court determined that there was not foreseeable harm in the forum, relying heavily, if not solely, on the fact that the plaintiffs, the hydentoras, are located and incorporated in Cyprus. Now that reasoning in and of itself is flawed. As the United States Supreme Court ruled in Keaton, and this Court has affirmed its rule several times, including in Maverick's photo, a plaintiff does not have to reside in the jurisdiction or in the forum or be present in the forum for there to be foreseeable harm in the forum. And that's what we have, so that the reasoning itself is flawed. But it's flawed. Kagan. Let me stop on that just to get a little more texture. We do have the Hertz case, which talks about the nerve center. And I note in your pleadings, you've said that you're headquartered in the United States. That's a little opaque for my taste. Where is the headquarters in the United States? Is that in the record? Yes. The declaration of John Krogman, he states that the operations are headquartered out of Santa Monica, California. But even if it wasn't headquartered … Well, no. I mean, and so is that – is that where the company's direction and control is? It is. Okay. And that's based on his affidavit, the declaration? That's based off his declaration. But even if that weren't true – let's just say for a second that it wasn't true, it was headquartered out of Cyprus and operated out of Cyprus – the situs of harm, as this Court stated in Mavericks, can be either where the plaintiff is located or where the wrongful act actually occurred. But even without the headquarters, the plaintiffs have a presence in the United States. Their servers are in the United States. They market to United States viewers. Their main customer base is in the United States. In fact, at the time of the infringements, they had 75,000 subscribed members in the United States, and they've had more than half a million unique subscribed members over the course of time, earning more than $60 million in the United States. They clearly have a presence here. In addition, they registered their copyrights here. Once a copyright infringement occurs in the forum, the harm is in the forum, and it's clearly foreseeable to be in the forum. So in moving from there and going back and looking at the intentional act issue, the trial court did not – But here, before you leave the harm – Sure. We're talking four videos out of how many? Four videos out of what they represent. Five hundred thousand. Five hundred and seventy-nine thousand. Okay. But it could be one video. It doesn't mean that there's not harm, that there's not a devaluation of the plaintiff's own product just because it's mixed in with however many other videos they have or have in storage. It doesn't matter if it's one. It doesn't matter if it's a hundred thousand. Now, that might matter as to value of damages later, but it doesn't matter as to whether or not the harm is foreseeable in the forum. Well, foreseeability. It may impact foreseeability. But when they are alleged, and we have established facts, that they went out and they found the plaintiff's video, they took it, and they put it on their own website, then they should have foreseeable harm in the forum that people are going to then likely not go subscribe. Well, that kind of then goes to maybe a second part of the test having to do this direction, the purposeful direction issue. Right. And one difference in this case from other cases we've looked at is you have not the defendant is not necessarily making the determination of ads and direction of ads. Here it was this ad broker. Does the — in your view, does that change anything? It doesn't. And it actually doesn't in this Court's view from their past rulings either. In Mavericks, it was an ad broker also. And the Mavericks court explicitly said it doesn't matter. When you are able to earn so much money from a jurisdiction, and it's important to your profit center, you either know or you're expected to know active or constructive knowledge. But it's not just the ads here that I think it's really important to point out that CyberWeb's filing in Barbados explicitly said we're internet marketers with our business primarily in the United States. And then CyberWeb hires NetMedia to operate this particular website. The other crucial fact is the content delivery network. Now, this CDN is important for the delivery of videos to be fast and efficient. The location of the videos, it's best that they're closer to the ultimate viewer. So to have your CDN in the United States shows that you intend to serve the U.S. market. There's no other reason to have it here. In addition, at the time of these infringements, although it changed in the months after they were discovered, at the time of the infringement, the defendant's actual full servers were here. Those were ultimately moved out of the country, but the CDN remained. And I'm now at three minutes, which I'd like to reserve. Thank you. Thank you, counsel. Good morning, and may it please the court, my name is Evan Fray-Witzer, and I represent the defendant appellees in this matter. With me are Val Gervitz and Matthew Schaeffer. Your honors, in this case, the district court, with the full benefit of complete jurisdictional discovery, properly concluded that the two foreign corporation plaintiffs had failed to deduce any evidence whatsoever that they had suffered any jurisdictional damages within the United States as a result of four of the videos having temporarily appeared on a website owned and operated by some of the foreign defendants that hosts, as the Court knows, some 580,000 videos, and that, as such, it could not properly exercise personal jurisdiction over the defendants consistent with the Due Process Clause of the Constitution. Your Honor, this entire case is defined by absences. The plaintiffs, two foreign companies that are incorporated and operate under the laws of the Republic of Cyprus, are absent from the United States. But they're not absent in their business in terms of U.S. customers and U.S. operations. Isn't that correct? Well, interestingly, Your Honor, that is not really what the district court found. What the district court said was they make some bare-bones allegations that they conduct some business in the United States, and after full and complete jurisdictional discovery, there was nothing to really support that idea. And, in fact, some of the things that the plaintiffs tried to argue in front of the court were their so-called presence within the United States turned out simply to not be true. They list, for example, on their copyright registrations an address in Encino, California. It turns out to be Encino Mailboxes, et cetera. And the court looked at that and said, you know, you say that you're here, but you don't really seem to be here. They talk about paying taxes within the United States, but then the court found that the unrebutted evidence showed that twice their corporate registrations had been revoked for failing to pay taxes within the United States. They said to the district court that it was — that it was relevant to the fact that it was relevant that their — their presence here was shown by the fact that they had many subscribers here, and yet the district court said that they had no real evidence of that other than one statement from the plaintiffs. And more importantly, though, what the district court ended up concluding was that — and these are the district court's words — the bare-bones allegations failed to show that they, as Cypress Corporations, were harmed in the United States, much less that the harm to them in this country was foreseeable. Counsel, Judge Gould, could I interject a quick question, please? Please, Judge. Yes. I'm having trouble seeing the pertinence of all the points that you're making, because it's — what I wonder is if — if the plaintiffs show videos to customers in the U.S. and they charge them money for that, to be members or to get a higher-grade product, and the defendant is showing the same videos for free, wouldn't that reduce the revenues that the plaintiff gets? Thank you, Your Honor. And it is — it is a good question. And the problem for the plaintiffs is that what they have asked the court to do and what they asked the district court to do was to assume what Your Honor is saying, to assume that they lost some sort of revenues, to assume that somebody, anybody within the forum failed to renew a membership with the plaintiffs or failed to actually decide to have a membership with the plaintiffs. And what the district court said is you don't come forward with any evidence that that actually happened. There are two cases, Your Honor, where that argument was similarly made. One's a Ninth Circuit case. One is a district court case from within the Ninth Circuit. The Ninth Circuit case that I would suggest is relevant to answer that question is Perfect Ten v. Google. It's 653 F. 3rd 976. And similarly, in that case, the plaintiff, Perfect Ten, produced pornographic still photos. Google was providing them through their thumbnails. And in that case, at least, the argument was made by Perfect Ten, and Perfect Ten had produced evidence to say, look, as Google has increased the number of thumbnails of our copyrighted a straight decrease. And despite the fact that that evidence was there, and what Perfect Ten was asking of the Court was to presume for preliminary injunction purposes that the strong evidence of copyright infringement should lead to a presumption by the Court that there were irreparable harm. And instead, this Court rejected that theory and said, quote, notwithstanding Perfect Ten's theory of irreparable harm, it failed to submit a statement from even a single former subscriber who ceased paying for Perfect Ten's services because of content freely available via Google. And the second case, and I understand, obviously, it's not binding on this Court, though I do think the Court will find it to be persuasive and well-reasoned, is AMA Multimedia v. Wannett, a decision from the District of Arizona, which is currently on appeal to this Court and in the process of being briefed and for which we provided the Court with a 28J letter. The facts of that case are remarkably similar, almost identical, to the facts of this case, with the only relevant difference being that the plaintiff there, AMA Media, is actually a Nevada company. So at least the plaintiff in that case had a connection to the United States, unlike here, and yet Judge Roslyn Silver dismissed the case for lack of personal jurisdiction. In that case, the judge on similar facts found that there wasn't even express aiming or minimum contact. But in any event, Judge Silver said that these cases are not really like Marvick's in as much as the operation of a website displaying adult videos is not an attempt to target a United States-specific audience as it was in Marvick's. And what's the evidence here? I mean, that's that. And the argument she's making there, of course, is a concern about turning websites into universal jurisdiction. And so the limiting principles are this targeting Marvick's, of course, being Hollywood. But here, if you have not an insignificant amount of your customers in the United States who are aimed at by use of your ad broker, why doesn't that count for purposeful direction? And again, and I need to separate them, Your Honor, the personal, the purposeful direction arguments, and understandably, counsel wants to confuse the two, are not the same as the significant jurisdictional harm argument. Correct. And what the Court in Judge Silver's words, and again, it was the same allegation that there was considerable traffic. It was an identical argument that is being made here. And Judge Silver said, AMA offers no supporting evidence that its subscribers have decreased because of ePorner or that individuals have decided not to initiate new subscriptions because of ePorner. ePorner offers visitors free access to its videos and attracts a large number of visitors to ePorner would visit AMA's sites but for the existence of ePorner. In other words, ePorner may not be preventing any individual from paying AMA for its services because the relevant individuals are only interested in free videos and are unwilling to pay AMA any amount. And again, concluded just as the Court did here, in short, AMA's bare-bones statements of harm are not sufficient to show it has suffered significant jurisdictional harm. I see, Your Honors, that my time is up. We would ask that the Court affirm the district court's decision for a lack of any jurisdictional harm, much less significant. Thank you, counsel. Rebuttal. Thank you. If I could respond to a few things. I want to make sure that we're not confusing the requirement underneath the Calder effects test regarding harm. It does not require us to show actual harm. It requires us to show foreseeable harm. And when you look at the Keaton v. Hustler magazine case decided by the Supreme Court, there was no requirement that actual harm be established. There was no requirement that there be a reader of the slanderous article, none whatsoever. In this case, in Mavericks, there was no requirement for there to be actual harm. And in fact, in one Ninth Circuit case, it was stated that the merits of the case don't need to – should not be part of the decision on jurisdiction, because otherwise, a negative finding on merits would then negate a court's jurisdiction. We have to show just that the harm is foreseeable in the forum, and we have clearly done that. With regard to the express aiming, in this case, there are, I count, ten facts, ten points of fact that support that this is expressly aimed into the United States. Not only that Barbados filing that explicitly says so, and the CDN, and then the servers that we discussed before, but at the time of these infringements, 23 percent of this website's viewership came from the United States. That's not by mistake. And that is almost four times larger than the next largest country. The U.S.-based ads, the defendants want to say that we don't know, we didn't do it, it was an ad broker. But with – not only is there constructive knowledge there, but that ad broker is NetMedia. It is the defendants themselves. They have these contracts with content producers. They want to say, well, we don't establish the contracts. That's a program called Pay-Per-View. NetMedia operates Pay-Per-View. So not only do you have constructive knowledge, you have actual knowledge of these relationships in the United States. Is there any specific evidence of geotargeting here? I do believe that we have declarations submitted that discuss the geotargeting, that there's ads. What do you think we look to for concrete evidence of geotargeting? There's a declaration of Jason Tucker. I would also point the Court to the terms of service on this website itself, which is at evidence excerpt record 104 and 234, which explicitly states that if you're a California resident, here's the address to file a complaint for us. They clearly understand that they are broadcasting in the United States. Thank you. I don't have anything further. Thank you, counsel. Thank you both for your arguments this morning. The case just argued will be submitted for decision.
judges: Thomas, McKeown, Gould